

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

November 23, 2018

<u>BY EMAIL</u>
The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

   Re:  <u>United States</u> v. <u>Clint Edwards</u>, S1 18 Cr. 163 (CS)

Dear Judge Seibel:

  The Government respectfully submits this letter in advance of sentencing in this matter, scheduled for November 30, 2018 at 10:00 a.m.  As set forth in the plea agreement between the parties (the "Plea Agreement"), the parties have stipulated to a Guidelines sentencing range of 360 months to life imprisonment (the "Stipulated Guidelines Range").  For the reasons set forth in this letter, the Government respectfully submits that a Guidelines sentence is warranted in this case and would be sufficient, but not greater than necessary, to achieve the legitimate purpose of sentencing.

## A.  Background to the Investigation

### 1.  Offense Conduct

  Beginning at least in or about May 2017, the defendant—who was then 26 years old—exchanged text messages with a 14-year-old girl (the "Victim").  PSR ¶ 7.  The defendant and the Victim initially made contact over a smartphone dating application, before switching to text messages.  PSR ¶ 7.  The defendant used his iPhone to communicate with the Victim.  PSR ¶ 7. An excerpt of the text messages exchanged between the defendant and the Victim are attached hereto as Exhibit A.[1]

  By at least on or about May 31, 2017, the Victim had told the defendant that she was in the ninth grade and had represented that she was 15 years old.  *See, e.g.*, Exhibit A at 8, 71-72.  During

---

[1] The defendant and the Victim used the Kik text messaging application, among other types of text messages, to communicate.  The defendant's Kik username was ███████████ the Victim's was ███████████

their text messaging conversations, the defendant and the Victim discussed at length their sexual histories and preferences. *See, e.g.*, Exhibit A at 1-5, 32-41, 27-49. They also discussed meeting in order to have sex and how to conceal their meeting from the Victim's mother. *See, e.g.*, Exhibit A at 6-16, 28-30. In addition, the defendant detailed his sexual fantasies and the sex acts he wished to perform with the Victim. *See, e.g.*, Exhibit A at 32-41, 27-49, 84-85; PSR ¶ 7. During these conversations, the defendant demanded that the Victim send him photos and videos of herself in sexual poses and engaged in sexual activity, and the Victim complied. *See, e.g.*, Exhibit A at 49-53, 55-57; PSR ¶ 7.

On or about June 4, 2017, the Victim informed the defendant that she was in fact 14 years old, not 15. *See* Exhibit A at 67-72; PSR ¶ 7. The defendant continued speaking with the Victim. Exhibit A at 68-72. The day after the Victim revealed her true age, the defendant agreed to come to the Victim's home to have sex with her. Exhibit A at 94, 96-98; PSR ¶ 7. Shortly before meeting the Victim, the defendant sent her a video of himself engaged in sexual activity with another individual. Exhibit A at 103-04.

On or about June 6, 2017, the defendant met the Victim at the apartment building where she resided. PSR ¶ 8. On that date, the defendant engaged in sexual intercourse and oral sex with the Victim in the building's basement on two separate occasions. PSR ¶ 8. On one of those occasions, the defendant used his iPhone to film himself having sexual intercourse with the Victim. PSR ¶ 8. The building's surveillance cameras captured the defendant's extensive sexual activity with the Victim and his use of a smartphone to film a portion of that activity. PSR ¶ 8.

Following the defendant's lengthy sexual activity with the Victim in the basement, the defendant took the Victim to his home in New Windsor, New York. PSR ¶ 9. Three days later, the Victim's mother reported the Victim missing. PSR ¶ 9. On or about June 13, 2017, law enforcement recovered the Victim from the defendant's residence. PSR ¶ 9. The Victim informed law enforcement that she and the defendant had had sex numerous times in the days they had been together at the defendant's residence. PSR ¶ 9.

Shortly before law enforcement arrived at the defendant's residence, the defendant had entered a backyard area to smoke marijuana. PSR ¶ 10. The defendant later admitted that he had observed law enforcement's presence at his house from his vantage point in the backyard, understood the reason for law enforcement's presence, and fled. PSR ¶ 10. On June 16, 2017, law enforcement located and arrested the defendant. PSR ¶ 10.

## 2. Defendant's History of Violence

The defendant has an extensive history of engaging in violent conduct. More than 50 police incident reports—dating from 1998 (when the defendant was approximately eight years old) through the time of his arrest in 2017—detail numerous arrests of the defendant for conduct ranging from larceny and theft to severe violence. PSR ¶ 28. Some of those reports document threatened or actual violence committed by the defendant as an adolescent, including engaging in fist fights with other teenagers; threatening to rape a classmate; exposing himself to a classmate; and threatening to kill another teenager. PSR ¶ 28, 34. The vast majority of those reports, however, detail the defendant's infliction of brutal violence on his mother. Specifically, the reports

recount numerous incidents of the defendant shoving, punching, hitting, choking, and attempting to suffocate his mother; throwing objects at his mother; threatening to kill his mother; destroying property in her house; and otherwise physically attacking her. PSR ¶¶ 28, 37, 40, 42.

In addition to the defendant's long history of assaulting his mother, the defendant has perpetrated grave violence against a number of other individuals. Two police reports from 2013 and 2015, respectively, detail the defendant's vicious physical assaults against the mother of his oldest child. PSR ¶ 29. Both assaults occurred in the presence of the defendant's young child; in one case, the mother was holding the baby while the defendant attacked her. PSR ¶ 29. In addition, the defendant's criminal history includes documented incidents in which the defendant threatened to attack a law enforcement officer and repeatedly called the officer racial slurs, PSR ¶ 37; threw a brick through the bedroom window of three children, PSR ¶ 41; struck a former girlfriend in the face, choked her, prevented her from calling for police assistance, and held her against her will in his home, PSR ¶ 43; and struck another former girlfriend in the face and repeatedly choked her in the presence of her two-year-old daughter, PSR ¶ 44.

Further, since the defendant's arrest in the instant case, he has been convicted of yet another act of extreme violence. PSR ¶ 30. On January 14, 2018, while incarcerated at the Westchester County Jail, the defendant charged another inmate, struck him in the head with his fist, threw him to the ground, climbed on top of him, grabbed him around the neck, and beat the inmate unconscious with his fists. PSR ¶ 30, 48. The victim of that assault was rushed by ambulance to an intensive care unit after he lost consciousness and began convulsing following the defendant's attack. PSR ¶ 48.

Throughout the defendant's life, various individuals have obtained orders of protection against him. PSR ¶ 56. Those individuals include his mother and, at present, three other women. PSR ¶ 56. There are currently a total of four active orders of protection in place against the defendant. PSR ¶ 56.

**B. The Plea Agreement and PSR**

The defendant pled guilty to one count of coercion and enticement of a minor to engage in illegal sexual activity, in violation of Title 18, United States Code, Sections 2422(b) and 2, in connection with his sexual communications and conduct with the Victim.

In the Plea Agreement, the parties agreed that the defendant's base offense level is 32 under U.S.S.G. § 2G1.3(c)(1); that a two-level increase applies under U.S.S.G. § 2G2.1(b)(1) because the offense involved a minor between the ages of 12 and 16; that a two-level increase applies under U.S.S.G. § 2G2.1(b)(2)(A) because the offense involved the commission of a sexual act; that a two level-increase applies under U.S.S.G. § 2G2.1(b)(6) because, for the purpose of producing sexually explicit material, the offense involved the use of a computer or an interactive computer service to entice a minor to engage in sexually explicit conduct; and that a five-level increase applies under U.S.S.G. § 4B1.5(b)(1) because the defendant engaged in a pattern of activity involving prohibited sexual conduct. PSR ¶ 3. The parties further agreed that if the defendant clearly demonstrated acceptance of responsibility to the satisfaction of the Government, a two-level reduction would be warranted pursuant to U.S.S.G. § 3E1.1(a), and the Government would move at sentencing for an

additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b), resulting in an adjusted offense level of 40. PSR ¶ 3.

As the defendant is in criminal history category VI, the Stipulated Guidelines Range is 360 months to life imprisonment, with a mandatory minimum sentence of 120 months' imprisonment. PSR ¶ 3. The defendant's fine range is $50,000 to $500,000 pursuant to U.S.S.G. § 5E1.2. PSR ¶ 3.

The U.S. Probation Office ("Probation") calculated the same Guidelines Range as that set forth in the plea agreement. PSR ¶¶ 15-27, 113. Probation recommended a sentence of 240 months' imprisonment. PSR at 31.

## C. A Guidelines Sentence is Warranted in the Defendant's Case

### 1. Applicable Law

The Guidelines are no longer mandatory, but they still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez* v. *United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh* v. *United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in 18 U.S.C. § 3553(a)(2). To the extent a district court imposes a sentence outside the range recommended by the Guidelines, it must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50).

### 2. A Guidelines Sentence Would Be Just and Appropriate

The Government respectfully submits that a sentence within the Guidelines range of 360 months to life imprisonment would be a fair and appropriate sentence in this case. In particular, the nature and circumstances of the offense, the history and characteristics of the defendant, the need to promote respect for the law, the need to protect the public from future crimes of the defendant, and the importance of ensuring adequate deterrence all justify such a sentence.

The defendant's offense is extraordinarily serious. The defendant sent sexual communications to, and solicited sexual photographs and videos from, the Victim, whom he believed to be a 15-year-old ninth grader. After learning that the Victim was in fact 14, the defendant continued discussing his sexual fantasies with the Victim, detailed the sex acts he would perform with her, demanded photos and videos of the Victim engaged in sexual activity, and sent the Victim a video of himself engaged in sexual activity. The defendant further arranged to meet

the Victim, taking care to plan his visit to coincide with the absence of the Victim's mother. Upon meeting the Victim in person, the defendant engaged in extensive sexual activities with her—including oral and vaginal sex—a portion of which he filmed with his iPhone. The defendant then returned to his home with the Victim, where he continued to engage in sexual activity with her over the course of several days. The fact that the defendant knew the Victim to be 14 years old—12 years his junior—and nonetheless enticed her to engage in sexual activity with him, repeatedly engaged in sexual activity with her, and produced child pornography depicting his sexual activity with the Victim underscores the defendant's remarkably poor judgment, callous indifference to the welfare of an adolescent, and willingness to exploit a vulnerable minor for his own purposes.

The defendant, moreover, utterly fails to appreciate the gravity and the harmfulness of his conduct.



The fact that the defendant not only fails to recognize the harm caused by his crime but in fact insists that he had a *positive* impact on the Victim—and that having future contact with the Victim would be appropriate—indicates his profoundly self-serving and self-aggrandizing attitude toward his crime. The defendant's inability to acknowledge the serious harm that his actions inflicted on the 14-year-old Victim, moreover, highlights the risk that he will engage in similar conduct in the future.

The defendant's reliance on the Victim's history of childhood sexual abuse as a justification for his crime illustrates his extreme dehumanization of the Victim and his complete lack of genuine empathy for her. Put simply, the defendant's "justification" for his offense amounts to the disturbing claim that he was entitled to engage in such conduct because the Victim had already experienced sexual abuse.

The defendant's history and characteristics—and the need to protect the public from future crimes of the defendant—further weigh in favor of a Guidelines sentence. The defendant has a long history of violence against a multitude of victims, including his mother, the mother of his oldest child, multiple former girlfriends, and another inmate, among others. As detailed above, in Dr. Must's Report, and in the PSR, the defendant has inflicted extreme and terrifying violence on

---

[2] Given the nature of some of the defendant's "advice" to the Victim—including advising the Victim to sell marijuana and to have sex in exchange for money, *see* Exhibit A at 22-24, 58-60—the defendant's claim that he helped the Victim illustrates the extent of his self-serving distortions.

his victims. ██████████████████████████████████████████████████ PSR ¶¶ 37, 40-44, 55 (documenting defendant's infliction of severe violence on various other victims). The presence of young children, including his own young child, has not deterred the defendant from physically terrorizing his victims. *See, e.g.*, PSR ¶ 29 (reporting defendant's assaults on the mother of his oldest child in the baby's presence); PSR ¶ 44 (documenting defendant's beating and repeated choking of former girlfriend in the presence of her two-year-old daughter).

The defendant's violent conduct appears to have begun during his childhood and—as evidenced by his brutal assault on another inmate since his arrest in this case—has not abated or diminished in severity over time. ███████████████████████ Indeed, in or about January 2018, after his arrest in the instant case, the defendant beat another inmate so severely that the victim lost consciousness, began convulsing, and had to be rushed by ambulance to an intensive care unit. PSR ¶ 47; ████████████████████████████████████████████████████████████████████

The defendant's response to this longstanding pattern of sustained violence speaks volumes about the danger he poses to the public. ████████████████████████████████████████████ The trivial provocations that led the defendant to beat another individual to the point of unconsciousness indicate the defendant's disturbingly casual approach to extreme violence. ███████████████████████████████████████ In short, the defendant's reflections on his past and present aggression indicate an engrained sense of entitlement to inflict severe violence on those that displease him.

In addition to his lengthy history of violent conduct, the defendant has a history of engaging in inappropriate sexual behavior with adolescents. ███████████████████████████████████ That same year, the defendant was convicted of acting in a manner to injure a child less than 17 years old when he was found to have engaged in sexual intercourse with a 14-year-old. PSR ¶ 36. ████████████████████████████████████████████████████████████████

The fact that the defendant's inappropriate sexual conduct has only escalated since his early adolescence suggests that if the defendant remains on his current trajectory, he will continue to pose a serious danger to his community. ████████████████████████████

characteristics, the psychosexual evaluation ordered by Probation concluded that the defendant

████████████████████████████████████████████████████████████████████████████

The need to promote respect for the law and, to the extent possible, deter the defendant from future criminal conduct likewise counsels in favor of a Guidelines sentence. The defendant's extensive experience with the criminal justice system thus far appears to have had no deterrent impact whatsoever on his behavior. The defendant has 16 prior convictions and many more prior arrests. *See* PSR ¶¶ 32-47; Def. Mem. Exhibit F at 1 (defendant reporting 30 prior arrests in 2013). The defendant's criminal history lays bare his utter disregard for the law. In addition to his numerous prior convictions, the defendant has violated the terms of his probation or parole on at least six occasions. PSR ¶¶ 35, 39-40. In one case, the defendant faced three probation or parole revocations in a two-year period, *see* PSR ¶ 35; a few years later, the defendant's probation or parole was revoked twice in a one-year period, *see* PSR ¶ 40.

During his psychosexual evaluation, furthermore, the defendant expressed an alarming yearning to return to criminal activity. ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████ Although the defendant has had the repeated opportunities of numerous prior convictions and terms of supervision to turn his life around, he has instead persisted in his antisocial orientation and engaged in increasingly serious crimes.

In his submission, the defendant argues that a below-Guidelines sentence of 120 months' imprisonment would be an appropriate punishment. Def. Mem. at 13. The defendant, however, overlooks a number of aggravating factors applicable in this case, including his utter lack of remorse for his crime; his lengthy history of brutal violence directed at a multitude of victims; his extensive criminal history; his long history of age-inappropriate sexual conduct; and his sustained disregard for his legal obligations and the terms of his supervision. In the course of his 16 prior convictions, the defendant has repeatedly received relatively brief prison terms followed by periods of supervision. *See* PSR ¶¶ 32-47. Yet the defendant did not take these opportunities to develop employment skills or even consistently hold a job. PSR ¶¶ 96-99; ████████████████

The defendant, moreover, repeatedly availed to take advantage of the medical and mental health treatment options that were offered to him. *See* Def. Mem. Exhibit E at 7 (stating that defendant failed to follow through with mental health services while on probation); Def. Mem. Exhibit F at 11 (noting defendant's tendency to discontinue his medication while at liberty).

████████████████████████████████████████████████████████████████████████████

In short, each of the Section 3553(a) factors—and, more specifically, the nature and circumstances of the defendant's offense conduct with the Victim; his utter lack of remorse and

self-serving justifications for his offense conduct; his lengthy history of serious violence and sexually inappropriate behavior; his longstanding disregard for the law; the lack of deterrence exerted by his numerous prior contacts with the criminal justice system and periods of supervision; and the clear and serious danger the defendant poses to the public—all demonstrate the need for a Guidelines sentence.

**E. Conclusion**

For the reasons set forth above, the Government respectfully submits that a Guidelines sentence is fair and appropriate in this case.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: <u>/s/ Gillian Grossman</u>
    Gillian Grossman
    Assistant United States Attorney
    (212) 637-2188

cc: Daniel Hochheiser, Esq.