UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CLINT EDWARDS,

                              Petitioner,

v.

UNITED STATES OF AMERICA,

                              Respondent.
-------------------------------------------------------X

**MEMORANDUM**
**OPINION AND ORDER**

21-CV-05978 (PMH)

18-CR-00163 (PMH)

PHILIP M. HALPERN, United States District Judge:

Clint Edwards ("Petitioner"), moves *pro se* under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.[1] Liberally construed, Petitioner's claims are summarized as follows: (1) Petitioner was not competent to plead guilty, and his guilty plea was not voluntary, knowing, and intelligent; (2) he received ineffective assistance of counsel; (3) the Government engaged in vindictive prosecution; (4) the sentencing Court gave inadequate consideration to Petitioner's mental health issues at sentencing; (5) there was an inadequate factual basis for the jurisdictional element of § 2422(b); and (6) his prosecution violated the bar against double jeopardy.

For the reasons set forth below, Petitioner's motion is DENIED, and the Petition is dismissed.

## **BACKGROUND**

The facts set forth herein are derived from Petitioner's motion (Civ. Doc. 1; Crim Doc. 51, "Pet.") and reply memorandum of law (Civ. Doc. 10; Crim. Doc. 58, "Reply"), the Government's

---

[1] Petitioner's motion was filed on the electronic docket of his criminal proceeding, No. 18-CR-00163, and also treated as a petition commencing a civil action, No. 21-CV-05978. Citations to the electronic docket in the criminal proceeding are referred to herein as "Crim. Doc." and citations to the electronic docket in the civil proceeding are referred to herein as "Civ. Doc.".

memorandum of law in opposition (Crim. Doc. 54, "Opp."), and the record of the underlying criminal proceeding.[2]

I.   <u>The Charge</u>

On June 19, 2017, Petitioner was charged by complaint with production of child pornography in violation of 18 U.S.C. §§ 2251(a), (e). (Crim. Doc. 1). Specifically, the complaint charged that on or about June 13, 2017, the FBI became involved in a search for a missing fourteen-year-old girl (the "Victim"). (*Id*. at 2). Law enforcement located the Victim at Petitioner's residence. (*Id*. at 2-3). The Victim advised that she met Petitioner through social media, engaged in sexual conduct with Petitioner, and that Petitioner had asked permission to record their sexual conduct on video. (*Id*. at 3). Petitioner was subsequently arrested pursuant to an arrest warrant issued by Magistrate Judge McCarthy. At his presentment on June 20, 2017, Jason Ser, Esq., was appointed as Petitioner's defense attorney. On February 27, 2018, a one-count indictment was filed charging Petitioner with production of child pornography, in violation of §§ 2251(a), (e). (Crim. Doc. 17).

On December 14, 2017, Mr. Ser submitted a written application to the U.S. Attorney's Office requesting that the Government permit Petitioner to plead guilty to one count of child enticement, in violation of 18 U.S.C. § 2422(b) ("Defense App.").[3] The application consisted of a ten-page letter from Mr. Ser setting forth an analysis of factors supporting the requested plea offer together with exhibits, including school records, mental health records, and reports of Petitioner's prior psychological examinations. (*Id*.). The application was supplemented on April 5, 2018 with an eight-page letter from Mr. Ser and an additional report concerning a forensic psychiatric and

---

[2] Citations to these materials correspond to the pagination generated by ECF.

[3] This document was submitted to the Court as Exhibit A to the Government's Memorandum of Law in Opposition, but was not filed on the docket due to its sensitive nature.

neuropsychological evaluation of Petitioner that Mr. Ser arranged. (*Id*.). On or about May 16, 2018, Mr. Ser was relieved as counsel, and the Court appointed Daniel Hochheiser, Esq., to represent Petitioner. (*See* Crim. Doc. 25).

## II.   The Plea Agreement and Guilty Plea

On July 2, 2018, Petitioner appeared before Judge Seibel, waived indictment, and consented to the filing of a one-count superseding information charging him with child enticement, in violation of 18 U.S.C. §§ 2422(b), 2 (the "Superseding Information"). (Crim. Docs. 28-29; Crim. Doc. July 2, 2018 Min. Entry; Crim Doc. 33, "Plea Tr."). Judge Seibel, during the July 2, 2018 hearing, after placing Petitioner under oath, conducted a thorough allocution of Petitioner. (Plea Tr. at 2-7). Among other things, Petitioner affirmed that he had obtained his GED; that he could read, write, speak, and understand English; that the medications he was taking for anxiety did not affect his ability to understand the proceedings; and that in the past 24 hours, he had not consumed any drugs, alcohol, pills, or medicine, apart from his prescribed medications. (*Id*. at 3-6). Petitioner further affirmed that his mind was clear and that he understood what was happening. (*Id*. at 6).

Judge Seibel confirmed that Petitioner had had "a full opportunity" to discuss the case with his attorney and that Petitioner was satisfied with his attorney's representation of him. (*Id*. at 6). Petitioner confirmed that he had read and discussed the Superseding Information with his attorney; understood his right to require the Government to present its case to a grand jury for indictment; and was knowingly and voluntarily waiving that right. (*Id*. at 7-9). The Government and defense counsel likewise represented that they had no doubts as to Petitioner's competence to plead guilty. (*Id*. at 6). Accordingly, Judge Seibel found that on the basis of Petitioner's responses to the Court's

questions, her observations of his demeanor, and the views of counsel, Petitioner was fully competent to enter an informed plea and to waive indictment. (*Id*. at 7).

Following arraignment, Petitioner pled guilty to the Superseding Information's sole count. (Crim. Doc. July 2, 2018 Min. Entry; *see generally* Plea Tr.). The plea was entered pursuant to a written plea agreement dated June 27, 2018, signed by Petitioner on July 2, 2018. (Opp. Ex. B, "Plea Agreement"). Among other things, Petitioner agreed to a sentencing range of 360 months to life imprisonment, with a mandatory minimum term of ten years' imprisonment (the "Stipulated Guidelines Range"). (*Id*. at 2-4). The parties further agreed that neither a downward nor an upward departure from the Stipulated Guidelines Range was warranted, and that neither party would seek any such departure or adjustment. (*Id*. at 4). Petitioner also stipulated that he would "not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241 . . . of any sentence within or below the Stipulated Guidelines Range of 360 months to life imprisonment," or "any term of supervised release that is less than or equal to the statutory maximum." (*Id*. at 5). In addition, Petitioner agreed to "waive[] any and all right to withdraw his plea or attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material[.]" (*Id*. at 6).

Judge Seibel, at the July 2, 2018 hearing, conducted a thorough colloquy pursuant to Federal Rules of Criminal Procedure 11 to determine whether the plea was knowing and voluntary and whether there was a factual basis for the plea. (*See generally* Plea Tr.). The Court confirmed that Petitioner understood the rights he was giving up by pleading guilty, and that he would be

sentenced on the basis of his guilty plea. (*Id*. at 10-13). Petitioner acknowledged that he understood he was giving up those rights, except for the right to counsel, and that it was "completely [his] choice whether to plead guilty." (*Id*. at 12). The Government then, at Judge Seibel's direction, set forth the elements of the offense to which Petitioner was pleading guilty. (*Id*. at 13). Judge Seibel advised Petitioner of the maximum penalties he would face as a result of his guilty plea and confirmed that he understood he faced a ten-year mandatory minimum sentence. (*Id*. at 13-15).

Judge Seibel confirmed that Petitioner understood that, when imposing a sentence, the Court would consider the Guidelines along with the factors set forth in 18 U.S.C. § 3553(a), and could impose a sentence that was higher or lower than that called for by the Guidelines. (*Id*. at 24-25). She further confirmed that Petitioner understood that he would not be permitted to withdraw his guilty plea if the sentence differed from what he expected or from the Stipulated Guidelines Range set forth in the Plea Agreement. (*Id*. at 28).

Judge Seibel next confirmed that Petitioner had read the Plea Agreement, had discussed "everything in it" with his attorney, and understood it fully. (*Id*. at 28). Petitioner swore that apart from the Plea Agreement, no one had made him any promises or used any threats, force, or coercion to induce him to plead guilty or to enter into the Plea Agreement. (*Id*. at 28-29). Judge Seibel asked Petitioner if "anyone made a promise to [him] as to what [his] sentence would be," and Petitioner answered, "No." (*Id*. at 29:16-18). Judge Seibel further confirmed that Petitioner understood that he was giving up his right to appeal or otherwise attack or challenge his conviction and sentence, as long as the District Court sentenced him within or below the Stipulated Guidelines Range. (*Id*. at 30-31).

The Government was asked to summarize its proof to ensure there was an adequate factual basis to support Petitioner's plea. (*Id*. at 31-32). The Government's proof included:

5

> [E]lectronic messages recovered from the victim's phone in which
> the victim informs the defendant that she is in the ninth grade and
> the victim and the defendant discuss engaging in sexual activity;
> surveillance video of the defendant engaging in oral sex and sexual
> intercourse with the victim in Port Chester, New York, following
> the exchange of the messages . . . mentioned; the defendant's video-
> recorded, post-arrest statement in which he discusses texting with
> the victim and engaging in sexual activity with her; and anticipated
> testimony from the victim that she informed the defendant that she
> was 14 prior to engaging in sexual activity with him. . . . [T]he
> evidence is going to show that the defendant used his cellphone to
> persuade, induce or entice a 14-year-old to engage in sexual activity
> with him, and that he, in fact, engaged in that activity with her; that
> he knew she was less than 18 years old before engaging in that
> activity. The activity is illegal. It's an activity for which one could
> be charged with a crime. And the evidence will further show that
> part of that enticement occurred in Port Chester, New York, and in
> Orange County.

(*Id*. at 31:20-32:25).

Petitioner interjected following the Government's summary of the evidence, complaining

that the Government's evidence did not include material from the dating application on which he

originally met the Victim. (*Id*. at 33). Mr. Hochheiser then explained that "[t]here was a discovery

production of some chats [between Petitioner and the Victim] which [Petitioner's] former lawyer

did not have, which I obtained from Ms. Grossman recently, which we've reviewed, we've gone

over, and he's upset that he didn't get them earlier[.]" (*Id*. at 33:10-13).

Petitioner then reiterated his complaint that the discovery included incriminating messages

between him and the Victim, but not the Victim's profile on the dating application through which

Petitioner had first contacted the Victim and which purportedly listed the Victim's age as eighteen

or older. (*Id*. at 33-34). Judge Seibel informed Petitioner that he did not have to plead guilty. (*Id*.

at 35). Judge Seibel cautioned Petitioner: "If you think there's more evidence that you want your

lawyer to go out and find, don't plead guilty." (*Id*. at 35:12-13). Judge Seibel again emphasized

that Petitioner did not have to continue with the plea and that it would not be held against him if

he decided not to plead guilty. (*Id.* at 36-37). Petitioner chose to proceed with the guilty plea. (*Id.* at 38).

Petitioner then made a factual allocution and explained that in June 2017, he used his iPhone and the Internet to chat with the Victim, a fourteen-year-old, to meet her and have intercourse with her, and that he knew his conduct was illegal and wrong. (*Id.* at 38). Petitioner also confirmed, in response to questions from Judge Seibel, that he in fact had sex with the Victim; that no one had threatened, coerced, or forced him to do so; and that at the time he believed the Victim to be under eighteen. (*Id.* at 39). Petitioner confirmed that he had no question in his mind about whether he was guilty, and that he was pleading voluntarily and of his own free will. (*Id.* at 40).

Judge Seibel found that Petitioner had voluntarily waived his rights, with an understanding of the consequences of his plea; that he had entered his plea knowingly and voluntarily; and that his plea was supported by an independent basis in fact. (*Id.*). Judge Seibel, accordingly, accepted the guilty plea. (*Id.*).

III.  The Sentencing

Following the July 2, 2018 hearing, a Presentence Report was prepared (Crim. Doc. 36, "PSR"), Mr. Hochheiser filed three sentencing submissions on Petitioner's behalf (Crim. Docs. 37, 38, 40), and the Government filed its own sentencing submission (Crim. Doc. 39).

On November 30, 2018, Petitioner appeared before Judge Seibel for sentencing. (Crim Doc. 44, "Sent. Tr."). Among other things, Judge Seibel confirmed that Petitioner, his counsel, and the Government had reviewed, and had no objections to, the PSR. (*Id.* at 3-4). After hearing from the Government, defense counsel, and from Petitioner as well (*id.* at 4-19), Judge Seibel determined that Petitioner's total offense level was 40; that he was in Criminal History Category

VI; and that his Guidelines sentencing range was 360 months to life imprisonment (*id*. at 20-24). Judge Seibel determined, after considering the factors set forth in 18 U.S.C. § 3553(a), to impose a substantially below-Guidelines sentence of 240 months' imprisonment, to be followed by a ten-year term of supervised release. (*Id*. at 24-33).

The Court considered the nature and circumstances of Petitioner's offense; his prior convictions, which included a previous conviction for having sex with a fourteen-year-old; his "unbelievable slew of acts of violence that didn't result in convictions" (*id*. at 25); his conduct during pretrial incarceration, which included "a vicious assault" on another inmate; his family ties; his lack of any lawful employment history or skills; the likelihood that Petitioner would reoffend in the future; his history of mental illness; and his history of refusing to take medication. (*Id*. at 24-33).

When the Court announced the 240-month sentence and began to set forth the conditions of supervised release, Petitioner interrupted with a prolonged outburst. (*Id*. at 33-35). Judge Seibel warned Petitioner that if he did not "quiet down, the marshals are going to take you out, and we are going to continue without you." (*Id*. at 34). Among other things, Petitioner stated, "So come take me. . . . You want to show violence? I'll show violence." (*Id*. at 34). The Court went "off the record for some time," during which "an unpleasant altercation" occurred and the marshals removed Petitioner from the courtroom. (*Id*. at 35).

When the proceeding resumed, Mr. Hochheiser confirmed that during the break, he had explained to Petitioner his right to be present for the remaining portion of the sentencing, and Petitioner had told his counsel that he did not want to be present. (*Id*.). Judge Seibel noted for the record that "before we all left for our own safety and to deescalate the situation," Petitioner had "jumped up and indicated how strongly he wanted to leave and not be present for the rest of what

was going on." (*Id*. at 35:20-36:1). Judge Seibel then read the conditions of supervised release into the record. (*Id*. at 36-42). Judge Seibel directed Mr. Hochheiser to advise Petitioner of his appellate rights. (*Id*. at 42-44).

The judgment of conviction was entered on December 6, 2018. (Crim. Doc. 42).

IV.  <u>The Appeal</u>

On December 10, 2018, Petitioner filed a Notice of Appeal from the judgment of conviction. (Crim. Doc. 43). Petitioner was assigned new counsel on the appeal, who, on March 29, 2019, filed a motion to be relieved as Petitioner's attorney pursuant to *Anders v. California*, 386 U.S. 738 (1967), together with a brief detailing that counsel had not identified any non-frivolous issues to be raised. (*See United States v. Edwards*, No. 18-3675 (the "Appeal Docket"), Docs. 26-28). Petitioner thereafter filed a *pro se* brief dated May 3, 2019, arguing that he had received ineffective assistance of counsel, that he had lacked the competence to plead guilty, a challenge to the factual basis for the jurisdictional element of § 2422(b), errors in the calculation of his Guidelines Range, that his rights were violated when the sentencing proceeding continued in his absence, the substantive reasonableness of his 240-month sentence, that the Government failed to produce discovery, and a challenge to a condition of supervised release. (*See* Appeal Docket, Doc. 56).

On July 30, 2019, the Government filed a motion to dismiss the appeal based on Petitioner's knowing and voluntary waiver of his appellate rights; and, in the alternative, for summary affirmance of the conviction and sentence because of the lack of any non-frivolous issues to be raised. (*See* Appeal Docket, Doc. 64). Petitioner thereafter responded to the Government's motion to dismiss, generally restating the claims set forth in his May 3rd brief. (Appeal Docket, Docs. 87, 93, 94, 99). On July 7, 2020, the Second Circuit granted appellate

counsel's *Anders* motion, granted the Government's motion to dismiss, and granted the Government's motion for summary affirmance. (Appeal Docket, Doc. 110).

Petitioner thereafter, on July 9, 2021, filed the instant Petition, and on July 24, 2021, filed a letter seeking reassignment of Judge Seibel "due to a conflict of interest [because s]he is a victim on another of [his] Federal cases stemming from this federal case." (Crim. Doc. 53).  On August 6, 2021, this case was reassigned to this Court. The Government's opposition was filed on September 13, 2021, and the motion was fully submitted with the filing of Petitioner's reply memorandum of law on November 8, 2021.

## STANDARD OF REVIEW

A prisoner in federal custody may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and internal quotation marks omitted). "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Sanders v. United States*, 1 F. App'x 57, 58 (2d Cir. 2001) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *United States v. Brickhouse*, No. 09-CR-01118, 2017 WL 1049509, at *4 (S.D.N.Y. Mar. 16, 2017). Further, to successfully challenge a guilty plea conviction under Federal Rule of Criminal

Procedure 11, "the petitioner must demonstrate that the violation was prejudicial—where the error was not preserved, this requires the petitioner to show that 'the violation affected substantial rights and that there is a reasonable probability that, but for the error, he would not have entered the plea.'" *Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007) (quoting *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005)).

The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

A hearing on a § 2255 petition is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "[A] hearing is not required where the petitioner's allegations are 'vague, conclusory, or palpably incredible.'" *Brickhouse*, 2017 WL 1049509, at *4 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).

## ANALYSIS

Petitioner claims that he is entitled to relief under § 2255 because he was not competent to plead guilty and his plea was not knowingly, voluntarily, and intelligently made; he received ineffective assistance of counsel; the Government engaged in vindictive prosecution; the sentencing Court gave inadequate consideration to his mental health issues; there was an inadequate factual basis for the jurisdictional element of the offense charged; and his prosecution violated the bar against double jeopardy.

As set forth below, the record in this case is more than sufficient to resolve the disputed factual issues without a hearing and fully supports a denial of the Petition.

I.   <u>Petitioner Has Waived His Claims in Whole or in Part</u>

Petitioner, as discussed above, waived his right in the Plea Agreement, to "bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241 . . . of any sentence within or below the Stipulated Guidelines Range of 360 months to life imprisonment." (Plea Agreement at 5). Thus, to the extent Petitioner is challenging his sentence, which was below the Stipulated Guidelines Range, "Petitioner must first overcome the hurdle imposed by this provision." *Brickhouse*, 2017 WL 1049509, at *5.

A knowing and voluntary waiver of the right to litigate pursuant to [§] 2255 is . . . valid and enforceable." *Abramo v. United States*, No. 12-CV-01803, 2014 WL 1171735, at *8 (S.D.N.Y. Mar. 21, 2014); *see also Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (citing *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000)). A waiver is knowing if the "defendant fully understood the potential consequences of his waiver." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004) (internal quotation marks omitted). The district court, in determining whether a defendant understood the consequences of a waiver, is "entitled to rely upon the defendant's sworn statements, made in open court . . ., that he understood . . . that he was waiving his right to appeal a sentence below [the Stipulated Guidelines Range]." *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001); *see also Abramo*, 2014 WL 1171735, at *9 (same). A knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings. *Lebowitz v. United States*, 877 F.2d 207, 209 (2d Cir. 1989).

A.  The Plea was Knowing and Voluntary

Petitioner argues that he was not competent to plead guilty and challenges the voluntariness of his plea. (Pet. at 27-29, 38-39). As an initial matter, his claim is barred in part by the mandate rule which "bars re-litigation of issues already decided on direct appeal." *Mui*, 614 F.3d at 53. It is "well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (citation and internal quotation marks omitted). The rule "prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Mui*, 614 F.3d at 53. A Section 2255 movant may not avoid this bar merely by offering "a slightly altered rearticulation of a claim that was rejected on his direct appeal." *Pitcher*, 559 F.3d at 124 (quotation marks omitted). Petitioner's claim that the conditions of his pretrial detention at the Westchester County Jail impacted his competency or the voluntariness of his plea were raised on appeal, considered by the Second Circuit, and rejected.

Petitioner's claim is also barred in part by the procedural default rule to the extent he argues the purported effects of his medication impacted his competency and the voluntariness of his plea. "The 'procedural default rule' provides that a defendant may not bring a claim on collateral review that 'could have been brought on direct appeal . . . absent cause and prejudice.'" *United States v. Curry*, No. 14-CR-00212, 2022 WL 19702, at *2 (S.D.N.Y. Jan. 3, 2022) (quoting *Mui*, 614 F.3d at 54); *see also Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." (citation and internal quotation marks omitted)). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first

demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622 (citations omitted). Because Petitioner failed to raise this claim at any time following the entry of his guilty plea until the instant Petition, this claim is not one of "actual innocence," and Petitioner has not demonstrated cause for failing to raise this claim at the appropriate time, it is procedurally barred.

Even if not barred by the mandate rule and procedural default rule, to be sure, Petitioner's challenges to his competence, and the knowing, voluntary, and intelligent character of his plea are flatly belied by the record. As detailed above, Judge Seibel asked detailed questions of Petitioner regarding his competency. (Plea Tr. at 3-7). Petitioner's sworn statements made in open court in response to the Court's questions demonstrate that Petitioner was fully competent to enter a guilty plea and did so knowingly and voluntarily. (*Id*. at 7, 35-38, 40-41). Among other things, Petitioner affirmed that he had obtained his GED; that he could read, write, speak, and understand English; that the medications he was taking did not affect his ability to understand the proceedings; and that in the past 24 hours, he had not consumed any drugs, alcohol, pills, or medicine, apart from his prescribed medications. (*Id*. at 3-6).

The Court specifically asked Petitioner whether he understood that he was giving up his right to appeal or in any other way litigate his sentence if it fell within the range stipulated by the Plea Agreement; and Petitioner responded in the affirmative. Petitioner confirmed that he had discussed the Plea Agreement with his attorney, that he fully understood the Plea Agreement, and he had not been induced or forced in any way to enter into the Plea Agreement; and as discussed below, Petitioner's counsel was not constitutionally ineffective. Moreover, in addition to Petitioner's statements made under penalty of perjury, Judge Seibel emphasized that Petitioner did

not have to continue with the plea and that it would not be held against him if he decided not to plead guilty. (*Id*. at 36-37). Petitioner nonetheless persisted with the guilty plea. (*Id*. at 38).

At the end of the plea hearing, and at the request of Petitioner's counsel, Judge Seibel directed the U.S. Marshals Service to consider Petitioner for a transfer from Westchester County Jail to a pretrial detention facility in Manhattan. (*Id*. at 43). Neither Petitioner nor his counsel indicated, however, that the conditions of confinement undermined Petitioner's competency or the knowing and voluntary nature of his plea. Rather, the request for a transfer was made due to purported issues between Petitioner and officials at the jail. (*Id*.). Accordingly, the claims asserted now by Petitioner are flatly contradicted by Petitioner's sworn statements at the plea hearing.

It cannot be disputed that Petitioner entered into the Plea Agreement and that he swore that he fully understood the terms of this agreement, including the waiver provision. As a result, the plea was knowing and voluntary.

B.  <u>Petitioner's Waived Claims</u>

Because the Court concludes that the plea was knowing and voluntary, Petitioner's claims of ineffective assistance of counsel, vindictive prosecution, and the sentencing Court's failure to consider his mental health are waived in whole or in part by the waiver provision in the Plea Agreement.

Petitioner claims he received ineffective assistance of counsel from Mr. Ser because he: (1) agreed to orders of continuance without Petitioner's permission; (2) told Petitioner that he was not entitled to receive certain materials in discovery; and (3) refused to challenge the complaint or build a defense showing that Petitioner was not guilty of the crime charged. (Pet. at 22-23). Petitioner claims he received ineffective assistance of counsel from Mr. Hochheiser because he: (1) refused to provide Petitioner with the discovery produced by the Government; (2) refused to

challenge the charging instruments or to investigate the Government's evidence; (3) improperly promised Petitioner a ten-year sentence; (4) did not know Petitioner's Guidelines Range; (5) failed to stop Petitioner's plea proceeding due to purported questions about Petitioner's competency; and (6) following Petitioner's outburst at sentencing, falsely represented that Petitioner had agreed to the continuation of the sentencing proceeding in his absence. (*Id*. 23-24).

The first of the claims that Petitioner waived is that counsel should not have agreed to orders of continuance prior to the Indictment. "Because a defendant's right to a speedy trial is nonjurisdictional, a knowing and voluntary guilty plea waives a speedy trial claim unless the defendant specifically reserves the right to appeal." *United States v. Coffin*, 76 F.3d 494, 496 (2d Cir. 1996); *see also Lebowitz*, 877 F.2d at 209. Also waived are Petitioner's claims that counsel failed and refused to provide Petitioner with certain discovery and failed to investigate and challenge the Government's evidence. *Coffin*, 76 F.3d at 497-98 ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. . . . A guilty plea effectively waive[s] all ineffective assistance claims relating to events prior to the guilty plea.").

Likewise waived is Petitioner's claim that counsel failed to pursue a competency hearing on his behalf, especially to the extent this claim is meant to target the sentence the Court imposed. *Ramirez-Hernandez v. United States*, No. 09-CV-04107, 2012 WL 1838286, at *4 (E.D.N.Y. May 21, 2012) (rejecting ineffective assistance of counsel claim on the basis he failed to seek a downward departure in light of appeal waiver provision); *Moore v. United States*, Nos. 00-CV-04560, 98-CR-00833, 2001 WL 253432, at *16 (S.D.N.Y. Mar. 15, 2001) ("Counsel's alleged failure to seek a Fatico hearing is not an ineffective assistance claim that relates to the validity of [Petitioner's] plea or the waiver itself.").

16

Petitioner's claim that counsel promised a ten-year sentence is also waived by Petitioner's execution of the Plea Agreement. *United States v. Concepcion*, Nos. 09-CV-04537, 06-CR-00743, 2009 WL 4884095, at *1-2 (S.D.N.Y. Dec. 16, 2009) (finding a § 2255 challenge to a sentence within the stipulated Guidelines Range based on a claim that a lawyer promised the petitioner he would receive a below-Guidelines sentence to be waived in the plea agreement). Petitioner's challenge to counsel's advocacy at sentencing, in particular that counsel was not aware of the Guidelines Range, is also covered by the waiver in the Plea Agreement. *Diaz v. United States*, No. 02-CV-3036, 2002 WL 31545835, at *1 (E.D.N.Y. Sept. 27, 2002) (Raggi, J.) ("To the extent [Petitioner] . . . challenges his sentence . . . because counsel is alleged to have been constitutionally ineffective at sentencing, his claim is barred by his plea agreement.").

Petitioner also expressly agreed in the Plea Agreement that he waived any right to "withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material" that had not been produced by the date the defendant signed the Plea Agreement. (Plea Agreement at 6). Thus, Petitioner also waived his claim of vindictive prosecution on the grounds that the Government withheld and fabricated evidence. *See, e.g., Torres-Cuesta v. United States*, No. 09-CV-00191, 2010 WL 3928588, at *3-4 (E.D.N.Y. 2010).

Finally, Petitioner's challenge to the substantive reasonableness of the sentence imposed on the grounds that the Court failed to consider his mental health at sentencing was forfeited by the waiver provision in the Plea Agreement. "A sentence 'conceivably imposed in an illegal fashion or in violation of the Guidelines,' which did not . . . happen here, will not invalidate a

waiver when the sentence imposed is within the stipulated Guidelines Range in the agreement." *Brickhouse*, 2017 WL 1049509, at *6 (quoting *Gomez-Perez*, 215 F.3d at 319).

Therefore, the Court concludes that Petitioner has waived these claims. Still, even if not waived, Petitioner's claims lack merit as further discussed *infra*.

II.   Petitioner's Claims Further Fail on the Merits

A.   Claims of Ineffective Assistance of Counsel

Petitioner's claims that he received ineffective assistance of counsel (Pet. at 22-24) are evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This standard requires Petitioner to first "show that counsel's performance was deficient," in that it fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687-90. "Second, the [Petitioner] must show that the deficient performance prejudiced the defense," meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687, 694. There is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance," *id*. at 689, "and it is Petitioner's burden to demonstrate 'that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.'" *United States v. Yeagley*, No. 08-CR-00707, 2017 WL 76903, at *7 (S.D.N.Y. Jan. 3, 2017) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

"In the context of plea negotiations, a defendant must establish that his attorney either failed to communicate a plea offer or failed to provide objectively reasonable advice about the decision to plead guilty." *Davis v. United States*, No. 18-CV-01308, 2019 WL 3429509, at *5 (S.D.N.Y. July 30, 2019). "'[P]urely speculative' arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, No. 11-CV-02175, 2013 WL 1700921, at *4

(S.D.N.Y. Apr. 17, 2013) (quoting *United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991) (alteration in original)). Prejudice in this case requires Petitioner to show that "but for his attorney's claimed ineffectiveness, he would have gone to trial and been acquitted, or that he would have gotten a sentence lower than the one he actually received." *Davis*, 2019 WL 3429509, at *5.

As detailed above, Mr. Ser's advocacy in plea negotiations resulted in the Government permitting Petitioner to plead to the one-count Superseding Information charging him with child enticement, in violation of § 2422(b), which carries a ten-year mandatory minimum sentence, rather than the one-count Indictment charging him with production of child pornography, in violation of §§ 2251(a), (e), which carries a 15-year mandatory minimum sentence. Mr. Hochheiser's advocacy in connection with the sentencing, including three sentencing submissions and arguments at the hearing, undoubtedly influenced the outcome in Petitioner receiving a sentence well below the bottom of Petitioner's Guidelines Range. (*See* Crim. Docs. 37, 38, 40; Sent. Tr. at 9:21-18:20). The representation of Petitioner by both attorneys simply cannot be said to have fallen below "an objective standard of reasonableness" under "prevailing professional norms," and Petitioner has failed to demonstrate prejudice from the representation he received. *Strickland*, 466 U.S. at 687-88, 693-94. In any event, the Court considers each of Petitioner's arguments regarding his attorneys.

        i.   Lawyer No. 1 (Mr. Ser)

Petitioner's assertion that his first defense attorney, Mr. Ser, rendered ineffective assistance of counsel lacks merit.

The record reflects, as regards the orders of continuance, that they were sought in pursuit of a possible disposition with the Government. Mr. Ser met with Petitioner on multiple occasions to discuss the case (Pet. at 9-16), sent an investigator to interview Petitioner (*id*.), and arranged for

a psychological evaluation of Petitioner (*id*. at 12). Mr. Ser then submitted an application for a plea offer that included a ten-page letter from Mr. Ser setting forth an analysis of factors supporting the requested plea offer together with exhibits, including school records, mental health records, and reports of Petitioner's prior psychological examinations; and a supplemental eight-page letter with an additional report concerning a forensic psychiatric and neuropsychological evaluation of Petitioner that Mr. Ser had arranged. (*See* Defense App.).

The decision to enter into plea negotiations with the government requires defense attorneys to make strategic choices in balancing opportunities and risks. *Premo v. Moore*, 562 U.S. 115, 124 (2011). "[S]trict adherence to the *Strickland* standard" is essential when considering attorneys' choices at the plea bargain stage, and substantial deference must be accorded to counsel's judgment. *Id*. at 125. "[C]onsents to exclude speedy trial time. . . . are in fact commonplace where defense counsel is attempting to negotiate a plea. They thus represent a trial tactic that might be considered sound trial strategy, and cannot constitute ineffective assistance of counsel." *Rosa v. United States*, 170 F. Supp. 2d 388, 401 (S.D.N.Y. 2001) (internal citations and quotation marks omitted).

In any event, Petitioner consented to the requested continuances. Petitioner alleges that Mr. Ser agreed to eight orders of continuance prior to Petitioner's indictment and that all but the first order of continuance were obtained without Petitioner's consent. (Pet. at 22-23). He further argues he "was only in court for" one of the requested continuances. (Reply at 7). The record reflects, however, that Petitioner signed onto the stipulations submitted in support of the final two orders of continuance, acknowledging that his counsel had fully advised him of, among other things, his right to be indicted and to have a trial within a specified time period, and that Petitioner had consented and agreed to the requested continuances. (Crim Docs. 15-16).

Petitioner also claims that Mr. Ser lied to him about the discovery to which Petitioner was entitled under Rule 16(a) of the Federal Rules of Criminal Procedure by telling him that the Government did not have to disclose certain materials, including security footage from the Victim's apartment building depicting Petitioner engaging in sex acts with the Victim, as well as the Victim's statements to investigators. (Pet. at 15-16, 22-23). As regards the video footage, the Government argues that it in fact could not be made immediately available to Petitioner in prison, as it contained child pornography. (Opp. at 24-25). In response, Petitioner argues that he should have been brought to the U.S. Attorney's Office to view the footage. (Reply at 8). As regards the Victim's statements, the Government argues that Mr. Ser correctly advised Petitioner that he was not entitled to receive them in discovery, as 18 U.S.C. § 3500—not Rule 16—"is the exclusive vehicle for disclosure of statements made by government witnesses" and "requires disclosure 'only after the witness has testified at trial.'" (Opp. at 25 (quoting *United States v. Urena*, 989 F. Supp. 2d 253, 258-59 (S.D.N.Y. 2013)). Petitioner argues, without legal support, that the Victim is not a Government witness. Petitioner's arguments do not establish that Mr. Ser's advice concerning those materials was inaccurate, fell below an objective standard of reasonableness, or resulted in any prejudice to him.

Petitioner further argues that Mr. Ser rendered ineffective assistance by "not challenging the complaint or investigating the Government's evidence," and by refusing to "build a defense to show [Petitioner] was not guilty." (Pet. at 23). He argues that counsel failed to locate evidence from a dating application where the Victim purportedly identified herself as an adult. (Pet. at 9, 22-23). Petitioner also annexes to his Reply a statement purportedly sworn to by the Victim in October 2021 (more than four years after Petitioner was arrested for the subject offense) alleging that Petitioner "never knew [her] real age" and that she was underage. (Reply at 17-18). But as

21

Petitioner both admitted at his plea hearing (Plea Tr. 38-39) and acknowledged at his sentencing (Sent. Tr. 19), he was in fact guilty of the crime charged: Petitioner swore under oath that he continued communicating with the Victim and engaged in sexual activity with her after he learned that the Victim was a minor. (*See* Plea Tr. 38-39; Sent. Tr. 19). Moreover, during the plea hearing Judge Seibel specifically discussed with Petitioner that he could choose not to plead guilty if he wanted his attorneys to try to locate additional evidence, but Petitioner instead chose to proceed with the plea. (Plea Tr. 33-38). Under these circumstances, Petitioner's claims fail to establish that Mr. Ser's representation fell below an objective standard of reasonableness, or resulted in any prejudice to Petitioner.

### ii.   Lawyer No. 2 (Mr. Hochheiser)

Petitioner argues that Mr. Hochheiser also provided ineffective assistance of counsel. Like his claims against Mr. Ser, Petitioner fails to make the required showings under *Strickland* for each of his claims against Mr. Hochheiser.

Petitioner argues that Mr. Hochheiser did not give him "the evidence from the government" (Pet. at 23), but in the Petition, Petitioner acknowledges receiving and reviewing discovery mailed to him in prison (*id*. at 15). Indeed, at the plea proceeding, Mr. Hochheiser referenced a subsequent discovery production of incriminating chat messages between Petitioner and the Victim, which he and Petitioner had "reviewed" and "gone over" together. (Plea Tr. at 33). Petitioner's claim is simply contradicted by the record and his allegations do not establish that the representation fell below an objective standard of reasonableness.  Likewise, as regards Petitioner's contention that Mr. Hochheiser refused to challenge the charging instruments or to investigate the Government's evidence, Petitioner does not identify what should have been done differently, except to reiterate in his Reply the conclusory allegations that "[t]o this day [Petitioner] does not know what the

Government['s] evidence really was" and that he "was coerced . . . to take a plea [he] didn't want to take." (Reply at 8-9). In light of his admissions at the plea allocution, "the impact of any material the prosecution might have had that would have been exculpatory is unexplained and inexplicable." *Torres-Cuesta*, 2010 WL 3928588, at *6 (denying ineffective assistance of counsel claim based on counsel's purported failures to provide discovery and to argue outrageous governmental conduct). Accordingly, Petitioner's claims against Mr. Hochheiser of ineffective assistance of counsel regarding discovery and challenging the Government's case must fail on both prongs of the *Strickland* test.

With respect to Petitioner's claim that Mr. Hochheiser promised that Petitioner would receive a ten-year sentence if he pled guilty is flatly contradicted by the record. As argued by the Government (Opp. at 27-28), Petitioner swore at his plea hearing that no one had "promised [him] anything or offered [him] any inducements to plead guilty or to enter into the plea agreement" and that no one had "made a promise to [Petitioner] as to what [his] sentence would be." (Plea Tr. at 29). Judge Seibel informed Petitioner that his Stipulated Guidelines Range was 360 months to life imprisonment (*id*. at 25); that Petitioner faced a maximum sentence of life in prison (*id*. at 14); that if anyone had attempted to estimate or predict Petitioner's sentence, such estimate or prediction could be wrong (*id*. at 27); and that nobody, including Petitioner's lawyer, "can or should give [him] any assurance as to what [his] sentence will be" (*id*. at 27). Petitioner did not respond to this argument in the Reply.

Petitioner also cannot overcome his sworn statements in Court with the conclusory allegations in his Petition as regards Mr. Hochheiser's knowledge of Petitioner's Guidelines Range. "A defendant's statements at his plea allocution 'carry a strong presumption of verity.'" *Rosa*, 170 F. Supp. 2d at 402 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). "The

subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Petitioner's statements at his plea allocution that he had "discuss[ed] everything" in the Plea Agreement with Mr. Hochheiser before he signed it (Plea Tr. at 28), as well as Mr. Hochheiser's own statements at the plea hearing evincing his knowledge of the applicable Guidelines Range (*see id*. at 25), "constitute a formidable barrier" in this collateral proceeding. *Blackledge*, 431 U.S. at 74 ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.").

As regards Petitioner's contention that Mr. Hochheiser rendered ineffective assistance of counsel for "not stopping [Petitioner's] plea knowing [he] had a pending 730 exam in Orange County Court," (Pet. at 23-24), Petitioner's conclusory allegations are again contradicted by the record. *See United States v. Geraldo*, 11-CR-01032-68, 2021 WL 230282, at *6 (S.D.N.Y. Jan. 21, 2021) (rejecting ineffective assistance claim based on counsel's failure to pursue a competency hearing where the defendant "has not offered any evidence to undermine his own sworn statements in open court or the conclusions of the Court and his counsel as to his competency at the time he pled guilty"). Petitioner's argument is that because there was a pending 730 exam, he was not competent to plea, and Mr. Hochheiser should have pursued a competency hearing. However, Petitioner offers no detail on the basis for a challenge to his competency other than referencing a "pending 730 exam" in a state court proceeding, which Petitioner concedes was never conducted. (Pet. at 23-24, 28-29). Moreover, the information that he had "to do another 730 exam again" in connection with his pending state charges was available to the Court in assessing Petitioner's competency because Petitioner raised it himself. (Plea Tr. at 5). As discussed above, the record is

clear that Judge Seibel, an experienced and careful District Court Judge, conducted a thorough inquiry into Petitioner's competence to waive indictment and plead guilty, and reached an independent conclusion—based on Petitioner's responses to the Court's questions, his demeanor, and the views of counsel—that he was competent to proceed. (Plea Tr. at 3-7). Accordingly, Petitioner's claims against Mr. Hochheiser for ineffective assistance of counsel regarding his various challenges to Mr. Hochheiser's performance in relation to the guilty plea fail on both prongs of the *Strickland* test.

Petitioner maintains that Mr. Hochheiser provided ineffective assistance of counsel by allegedly falsely representing that, after the "unpleasant altercation" prompted by the Court's announcement of Petitioner's sentence, Petitioner had permitted the sentencing to proceed in his absence. (Pet. at 24). First, Petitioner's conclusory assertion is contradicted by the record.

As Judge Seibel began to read the conditions of supervised release, Petitioner interjected to state that "[t]his is a waste of time, man." (Sent. Tr. 33:25). Following Petitioner's lengthy and disruptive courtroom outburst—and the subsequent intervention of the U.S. Marshals Service— Judge Seibel asked Mr. Hochheiser to confirm that Petitioner had "consented to [the Court] continuing to read the conditions [of supervised release] and to conclude the sentence in his absence." (*Id*. at 35). Mr. Hochheiser represented that, "[d]uring the break," he had had "a conversation with [Petitioner] while he was handcuffed on the floor and explained to him that he had a right to be at the sentencing for the remaining portion of the sentencing, and he told me that he didn't want to be present, and he just wanted to get medical attention." (*Id*.). Judge Seibel also noted for the record that, "I don't know how much of his outburst was taken down by the court reporter before we all left for our own safety and to deescalate the situation, but as I was reading

the conditions of supervised release, [Petitioner] jumped up and indicated how strongly he wanted to leave and not be present for the rest of what was going on." (*Id*. at 35-36).

Second, this claim fails as Petitioner cannot show he was prejudiced by his absence during this portion of the sentencing. The PSR set forth the conditions of supervised release and Petitioner's attorney was present and able to make any appropriate objections as Judge Seibel read those conditions into the record. (PSR 34-38; Sent. Tr. at 36-41). Petitioner argues in conclusory fashion that Mr. Hochheiser should not have been permitted to continue without him with the reading of the conditions into the record. He contends that at that point, counsel was subject to a conflict of interest in that he became a witness for the Government to the altercation in the courtroom. (Reply at 10). However, the Court directed Mr. Hochheiser to promptly advise Petitioner of the supervised release conditions by mailing him a copy of the judgment and to notify him again of his right to appeal. (Sent. Tr. at 42-43). Thus, Petitioner was not prejudiced by the continuation of the proceeding following his outburst.

Under the circumstances, Petitioner's ineffective assistance claims regarding his defense attorneys are conclusory, contradicted by the record, and do not meet the burden required under *Strickland*.

### B. Claims of Vindictive Prosecution

Petitioner's arguments that the Government engaged in a vindictive prosecution by withholding and fabricating evidence (Pet. at 32-34) fail for several reasons.

As for the purported withholding of evidence, Petitioner asserts that the Government withheld incriminating text messages recovered from the Victim's phone. (Pet. at 32). Petitioner had raised this claim on appeal, and the Second Circuit considered and rejected it. Thus, the

mandate rule precludes Petitioner from bringing this claim in his Petition. *Mui*, 614 F.3d at 53. Even if the claim were not barred by the mandate rule, the record reflects that the claim lacks merit.

As stated at the plea hearing, Petitioner received the materials in discovery in a production subsequent to the initial production. (*See* Plea Tr. at 33). Moreover, Petitioner also alleges in his Petition that he received discovery from the Government including incriminating messages extracted from the Victim's phone. (*See* Pet. at 33). Petitioner contends, in his Reply, that the Government withheld evidence that he "never knowingly knew he was committing a crime" and cites to the alleged statement of the Victim dated October 20, 2021 as sole support for that argument. (Reply at 5, 17-18). Petitioner's claim that the Government withheld incriminating messages is speculative, conclusory, and contradicted by the record and his own acknowledgement that he received and reviewed the evidence.

Petitioner's claim that the Government purportedly fabricated evidence is barred under the procedural default rule, as he did not raise this claim at any time following his guilty plea, until the instant Petition. Even if not barred by the procedural default rule, Petitioner's claim that the Government must have obtained the messages from the Victim's phone illegally or fabricated that evidence is specious and lacks merit. The only basis cited by Petitioner for this argument is that the discovery did not include a search warrant for the Victim's cellphone or a statement from the Victim providing consent for law enforcement to search her phone. (Pet. at 33-34). Petitioner has no standing to challenge the Government's search of the Victim's phone, in which he has neither a property interest nor a reasonable expectation of privacy. *See United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014); *United States v. Ray*, 541 F. Supp. 3d 355, 2021 WL 2134861, *11 (S.D.N.Y. 2021).

Under the circumstances, Petitioner's claim of vindictive prosecution based upon the purported withholding and fabrication of evidence is without merit.

C. <u>Claims Concerning Inadequate Consideration to Mental Health at Sentencing</u>

Petitioner argues that his sentence was unreasonable in that Judge Seibel did not adequately consider his mental health issues at sentencing. (Pet. at 48-49). The Government, in opposition, argues that Judge Seibel gave "extensive consideration" to Petitioner's mental health issues (Opp. at 36-37), to which Petitioner failed to respond (*see generally* Reply).

A review of the sentencing transcript demonstrates that Judge Seibel fully considered Petitioner's history of mental health issues. (*See* Sent. Tr. 27-28, 30, 32-33). Judge Seibel appropriately considered Petitioner's history and characteristics, including his history of mental illness, and described Petitioner's mental health problems as a factor in fashioning his below-Guidelines sentence (Sent. Tr. 28, 33).

The sentencing Court noted that although there was "no question" that Petitioner had serious mental health problems, he also had a history of refusing to take medication (Sent. Tr. at 27) and of declining to follow through on offers of help (*id*. at 30). The Court stated:

> So there is absolutely no question that mental illness is a big part of everything in this defendant's life, and generally that . . . does make you less culpable than somebody who does evil things because he is evil; but what we know about [Petitioner] is he is not – he may say he knows he needs help and he wants to get better, but when push comes to shove, he doesn't do it. And he knows exactly what's going to happen when he goes off his meds, and he does it anyway. So that's really worrisome.

(*Id*. 28). In sum, Judge Seibel clearly considered Petitioner's mental health issues at sentencing and Petitioner's claim to the contrary fails in light of the clear record.

III.    Allegations of Other Constitutional Violations Lack Merit

    A.    Claims of Lack of Jurisdiction

Petitioner argues that there was an inadequate factual basis for the jurisdictional element of § 2422(b). (Pet. at 43-44). Specifically, he contends that his use of the Internet to engage in child enticement could not constitute the use of a "facility or means of interstate commerce" because he and the Victim were both physically located within New York State when he used the Internet and his cellphone to communicate with the Victim. (Pet. at 43). This claim fails procedurally and substantively.

The mandate rule bars this claim as Petitioner raised this argument on appeal, and the Second Circuit considered and rejected it.  Even if this argument were not procedurally barred, it is meritless. The Superseding Information alleged that in violating § 2422(b), Petitioner used both a mobile device and the Internet as a "facility and means of interstate and foreign commerce." (Doc. 28). Petitioner does not cite any authority to contrary and, in his Reply, argues that the jurisdictional element is lacking because the Government did not have "probable cause or even evidence" that Petitioner knew the Victim's real age. (Reply at 13). This argument is unavailing. The Second Circuit has clearly held that purely intrastate use of the Internet and cellphones constitutes use of a facility of interstate commerce. *United States v. D'Amelio*, 683 F.3d 412, 422-423 (2d Cir. 2012) (explaining that both the Internet and a telephone qualify as a "facility or means of interstate commerce" for purposes of § 2422(b)); *see also United States v. Giordano*, 442 F.3d 30, 39 (2d Cir. 2006) (Sotomayor, J.) (discussing the "unremarkable conclusion that the national telephone network is a "facility of interstate . . . commerce"). Consequently, Petitioner's claim of lack of jurisdiction cannot be sustained.

B.   Claims of Double Jeopardy

Petitioner contends that his prosecution violated the bar against double jeopardy. (Pet. at 53-54). Specifically, Petitioner argues that his federal prosecution for child enticement in violation of 18 U.S.C. § 2422(b), and his New York State prosecutions for rape in the second degree in violation of New York Penal Law § 130.30, unconstitutionally subjected him to multiple punishments for the same offense in that all of the charges concerned the same conduct with the Victim. This claim fails for two reasons.

First, Petitioner is precluded under the procedural default rule from raising this claim because he failed to raise it at any time either before or after his guilty plea, including on direct appeal. Because this claim is not one of "actual innocence," and Petitioner has not demonstrated cause for failing to raise this claim at the appropriate time, it is procedurally barred. *See Bousley*, 523 U.S. at 622.

Second, on the merits, Petitioner's double jeopardy argument does not hold water. "As the Supreme Court recently reaffirmed, the 'dual-sovereignty' doctrine holds that 'a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute.'" *United States v. Nyenekor*, 784 F. App'x 810, 813 (2d Cir. 2019) (quoting *Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019)). The doctrine also permits the federal Government to prosecute a defendant if he has already been prosecuted by the state. *Id*. If jeopardy had attached to Petitioner's state criminal charges, the Government was not barred from pursuing its own charges. *Id*. Thus, assuming that a violation of § 2422(b) constitutes the same offense as second-degree rape in violation of N.Y.P.L. § 130.30 (or N.Y.P.L. § 130.45 as Petitioner alleges in Reply), Petitioner's claim of double jeopardy fails on the law.

## **CONCLUSION**

Based on the foregoing, Petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence is DENIED and no hearing is necessary.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111-12 (2d Cir. 2000). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent, to close the civil case pending under Docket No. 21-CV-05978, and to mail a copy of this Memorandum Opinion and Order to Petitioner at the address stated on the docket. The Clerk of Court is further directed to terminate the motion sequence at Doc. 51 in the criminal case pending under Docket No. 18-CR-00163.

SO-ORDERED:

Dated:  White Plains, New York
January 26, 2022

_____
Philip M. Halpern
United States District Judge

31